# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO
_____

AARON RAMOS,

      Plaintiff,

    vs.                                    Civil No. 13-00129-WJ-CG

EMERALD CORRECTIONAL MANAGEMENT, LLC;
JOHN KELLER; JOHN DOES 1-4,

      Defendants.

## MEMORANDUM OPINION AND ORDER
## DENYING PLAINTIFF'S REQUEST FOR REMAND;
## GRANTING DEFENDANT'S MOTION TO DISMISS; and
## DENYING AT THIS TIME DEFENDANT'S REQUEST FOR SANCTIONS;

THIS MATTER comes before the Court upon a Motion to Dismiss filed by Defendant Emerald Correctional Management, LLC ("Emerald"), filed on February 12, 2013 (**Doc. 5**); Defendant Emerald's Motion for Sanctions Pursuant to Fed.R.Civ.P. 11, filed on March 11, 2013 (**Doc. 14**); and a Motion to Remand (self-styled as "Plaintiff's Objections to Removal and Motion to Remand," filed by Plaintiff on February 26, 2013 (**Doc. 9**). Having reviewed the parties' briefs and applicable law, I find that Plaintiff's request for remand shall be denied; Defendant's motion to dismiss shall be granted; and Defendant's request for sanctions shall be denied at this time, subject to re-filing, as explained below.

## BACKGROUND

Plaintiff in this case brings federal constitutional and state law tort claims against Defendant for injuries he received while he was incarcerated at Lincoln County Detention Center ("LCDC"). In the complaint, Plaintiff alleges that he was attacked by inmate enemies after an

external secure perimeter door to the outdoor recreation yard had been left open and unattended. Plaintiff filed the complaint on December 11, 2012 in the Twelfth Judicial District, County of Lincoln.  Defendant Emerald removed the case to federal court on February 26, 2013.

## I.     Two Lawsuits

Defendant states that the claims raised by Plaintiff in this lawsuit are the very same claims raised previously in a lawsuit filed in federal court on May 29, 2012.  *See Ramos v. County of Lincoln, et al.,* Civil No. 12-575 BRB-SMV ("previous federal lawsuit").  Defendant seeks dismissal of Plaintiff's federal claims under the collateral estoppel doctrine.  In the previous federal lawsuit, Plaintiff also sought actual and punitive damages (as well as attorney's fees) for injuries sustained as a result of the same door having been left open and unattended.  In that case, Plaintiff attached to the Amended Complaint the affidavit of Charlie White, who was employed as a correctional officer at LCDC during the events described.  Mr. White's affidavit ("White Affidavit") averred that an "inordinately high rate of turnover" existed at LCDC, resulting in a "chronic shortage" of staff.  Civil. No. 12-575 BRB-SMV, Dkt. No. 11-1 ¶ 4.  He alleges LCDC staff members "were either untrained or undertrained in the basic areas of corrections" and that he witnessed "numerous inmate assaults . . . which I attributed directly to the insufficiency of staff and lack of training." *Id*. at ¶¶ 4, 7.

Sitting by designation for the United States District Court for the District of New Mexico, United States Circuit Judge Bobby R. Baldock concluded that Plaintiff had failed to state a claim against Defendant Emerald under the standard set forth in *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).[1]  Judge Baldock found that Plaintiff's allegations of understaffing problems at the jail negatively affecting inmates did not plausibly state a claim for liability under § 1983:

---

[1]  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

Even if Emerald could be liable for understaffing, Plaintiff has not stated a plausible claim for such liability. Emerald officials could hardly foresee that understaffing would lead to doors being left open, since it only takes one corrections officer to close a door. More importantly, Keller's careless actions in escorting Plaintiff through the corridor without ensuring the recreation yard door was closed have no obvious connection to understaffing. In short, even if the LCDC was understaffed, Plaintiff's injuries did not result from Emerald's deliberate indifference to the need for greater staffing. Thus, Plaintiff has failed to state a claim against Defendant Emerald.

12cv00575 BRB-SMV, Doc. 19 at 8.[2]   Judge Baldock also found that, although Federal Rule of Civil Procedure 10(c) allows a "written instrument" to be attached to a complaint, the rule did not extend to "evidentiary matters" such as the White Affidavit. However, the Court declined to exercise this Court's supplemental jurisdiction under 28 U.S.C. § 1367(c)(3) over Plaintiff's state law claims brought under the New Mexico Tort Claims Act.

Unfazed and undeterred by Judge Baldock's rulings in his previous case, Plaintiff decided to try his luck by filing the same lawsuit a second time, this time in state court and modifying the basis for the constitutional claims. According to Defendant, Plaintiff even attached the same White Affidavit to the complaint, even though Judge Baldock had taken almost two pages to explain why the affidavit was improper under Fed.R.Civ.P. 10(c), and had granted Defendant's motion to strike the affidavit.[3]

---

*Twombly*, 550 U.S. 544, 570 (2007)). Although a court must accept all the complaint's factual allegations as true, the same is not true of legal conclusions. *Id.* Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" will not suffice. *Twombly,* 550 U.S. at 555. "Thus, in ruling on a motion to dismiss, a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011).

[2]   Judge Baldock noted that although Emerald was not a municipality, it was still liable to suit under § 1983. 12cv00575, Doc. 19 at 8, citing *Meyers v. Okla. Cnty. Bd. of Cnty. Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998) (citing *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694 (1978)).

[3]   For this lawsuit, Defendant states that the affidavit was not actually attached to the complaint that was filed in state court, but instead attached to the complaint faxed to defense counsel. Thus, it is not before the Court for two reasons: first, because it would be stricken for the same reason as it was stricken by Judge Baldock (because it is not a "written instrument" within the meaning of Rule 10(c)); and second, because an affidavit faxed to defense counsel cannot be considered part of the Court record.

II.     **Whether Court Has Jurisdiction**

Plaintiff contends that the Court's consideration of Defendant's motion to dismiss is premature, without first determining whether the Court has jurisdiction to hear the matter.   In his motion for remand, Plaintiff argues that after his lawsuit was dismissed in state court, he reworked the complaint in the instant lawsuit to remove any reference to any federal statute, and insists that his complaint does not state a federal question.   Thus, he contends, this case should be remanded back to state court.

Removal is based on a plaintiff's complaint at the time of removal.  *Metro Ford Truck Sales, Inc., v. Ford Motor Co., et al.*,145 F.3d 320, 326 (5th Cir. 1998) (for purposes of original and removal jurisdiction, federal question must be presented by plaintiff's complaint as it stands at the time the petition for removal is filed).  A case arises under federal law if a well-pleaded complaint establishes "either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Nicodemus v. Union Pac. Corp.,* 440 F.3d 1227, 1232 (10th Cir.2006); *Caterpillar v. Williams*, 482 U.S. 386, 392 (1987) (federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint).

The complaint at issue here (Doc. 1, Notice of Removal, Ex. 1) most certainly invokes federal jurisdiction:

- Defendant Emerald willfully disregarded Plaintiff's rights "guaranteed by the First and Fourteenth Amendments to the United States Constitution." ¶ 7;

- Plaintiff's prayer for relief requests compensation for violation of his "constitutional rights";

- Plaintiff's assertion that his "constitutional right to be safe and secure in his person and right to procedural and substantive due process" were violated."  ¶ 22; and of course,

- Plaintiff's request for attorney's fees pursuant to federal statute, 42 U.S.C. § 1988.

No further analysis is necessary on federal subject matter jurisdiction.  Accordingly, Plaintiff's motion for remand is DENIED.

## II.     Collateral Estoppel Precludes Plaintiff's Constitutional Claim

The doctrine of collateral estoppel (sometimes referred to as "issue preclusion") acts to prevent parties from re-litigating issues which have already been decided by a court of competent jurisdiction in a different proceeding.  *Sil Flo, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1520 n. 3 (10th Cir.1990) (other citations omitted).  There are two prerequisites to the application of collateral estoppel (1) the issue to be precluded must have been actually and necessarily decided in the prior case, and (2) the party against whom collateral estoppel is invoked must have had a full and fair opportunity in the earlier case to litigate the issue to be precluded.  *Ten Mile Industrial Park v. Western Plains Service Corp.*, 810 F.2d 1518, 1523 (10th Cir.1987).

In this case, the Defendant Emerald was a defendant in the previous federal lawsuit and Plaintiff's federal claims were dismissed on their merits.[4]  Thus, the only question is whether the issues in the previous lawsuit were actually and necessarily decided in that case.   The previous lawsuit alleged violations of procedural due process in Count I (actually alleged as a municipal liability claim), and a Tort Claims Act in Count II.   The instant lawsuit that was removed from state court alleges claims, as much as the Court can tell, brought under the First and Fourteenth Amendment, as well as the same state law claim.[5]

Plaintiff has absolutely nothing to say by way of defense to the motion to dismiss, except to state in a two-paragraph response that the case should be remanded.   The Court has little need

---

[4]   In the previous lawsuit in front of Judge Baldock, Plaintiff had initially name both LCDC and Lincoln County as defendants in the previous lawsuit, but after Defendant Emerald filed a motion to dismiss those parties, Plaintiff filed a timely amended complaint dropping his claims against both the county and LCDC.  *See* Doc. 19 at 3.

[5]   The complaint completely skips a "Count One," going directly to Count Two.  However, the text of the pleading before Count Two appears to allege federal constitutional claims under the First and Fourteenth Amendment.

of a response under these circumstances, since the identical issues which were litigated in the earlier federal case were decided against Plaintiff.

The Court also notes that Plaintiff would be precluded from the doctrine of res judicata in pursuing these claims a second time.  Res judicata applies when the prior action involved the same parties or their privies; the prior action involved the same claim or cause of action; and the prior action resulted in a final judgment on the merits.  *Clark v. Haas Group, Inc*., 953 F.2d 1235, 1237-38 (10th Cir.), *cert. denied*, 506 U.S. 832 (1992).   In order to determine what constitutes a single "cause of action" in any given case, the Tenth Circuit applies the transactional approach, which looks at whether "the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." *Clark v. Haas Group, Inc.,* 953 F.2d 1235, 1238 (10th Cir.), *cert denied,* 506 U.S. 832 (1992) (citing Restatement (Second) of Judgments § 24 (1982).   Plaintiff's claims against Defendant in this lawsuit clearly arise from the same operative facts which formed the basis of the previous federal lawsuit.  Thus, Plaintiff is precluded from proceeding on these claims again.

**III.    State Law Claim**

The Court may use its discretion to decline jurisdiction over Plaintiff's state law claim brought under the Tort Claims Act, as Judge Baldock did in the previous federal lawsuit. However, the disposition of Plaintiff's state law claim is clear and uncomplicated, and the Court sees no reason to invite Plaintiff to file yet another lawsuit in state court based on his state law claim.

Defendant first contends that Plaintiff's state law claim under the Tort Claims Act is barred by the two-year statute of limitations in NMSA § 41-4-15, which states that

"[a]ctions against a governmental entity or a public employee for torts shall be forever barred, unless such action is commenced within two years after the date of occurrence resulting in loss, injury or death. . . ."   §41-4-15(A).   Plaintiff alleges that the underlying incident occurred on June 23, 2010.  Compl., ¶ 13.   He filed this lawsuit on December 11, 2012, which is well after the two-year limitations period expired.   The Court notes that the timeliness of the filing of the state law claim for the previous federal lawsuit (filed on May 29, 2012, about a month before the statute of limitations expired) has no bearing on the timeliness of the claim for an entirely separate lawsuit.

Defendant also contends that Plaintiff fails to state a claim for which relief can be granted because he fails to identify a specific waiver of immunity under the Tort Claims Act.  *See Weinstein v. City of Santa Fe,* 121 N.M. 646, 649 (1996) (the Tort Claims Act provides governmental entities and public employees with immunity from tort suits unless there is a specific waiver of that immunity set forth under the Act);  *Armijo v. Dept of Health & Environment*, 108 N.M. 616 (Ct.App. 1989) (provision in Tort Claims Act purporting to waive governmental immunity must be strictly construed).

Defendant is also entitled to dismissal of Plaintiff's state law claim on this theory. Although it is not entirely clear on what specific waiver of immunity Plaintiff relies, Plaintiff mentions two provisions:  § 41-4-6 (Complaint, ¶ 6); and §41-4-12 (Complaint, ¶ 24).   Neither one suffices as a basis for a plausible claim for relief under the Tort Claims Act.   Section 41-4-6 refers to liability of public employees "while acting within the scope of their duties in the operation or maintenance of any building, public park, machinery, equipment or furnishings." The provision is intended to provide a cause of action in situations where the building or premises is dangerous to the public.   Here, Plaintiff's injuries did not result from the operation or

maintenance of a building, but from actions taken by other inmates.   Inasmuch as Plaintiff might argue that the "operation" of the door (that is, failing to keep it closed) caused his injuries, the Court would counter that the door itself did not pose a danger to the inmates or to Plaintiff.  It operated exactly the way it was supposed to: when open, inmates could pass and when closed, inmates could not go through.[6]  *See, e.g., Romero v. Valencia Cty,* 133 N.M. 214 (2002) (provision of Tort Claims Act applied to design defect claim where individual fell off platform at waste transfer facility and where "operation or maintenance" aspect of provision included negligence in failing to correct dangerous condition created when property was constructed or created from design defect).

Similarly, Plaintiff's claim cannot be brought under the provision regarding liability for law enforcement officers, § 41-4-12, because Plaintiff's claims are brought against corrections officers who are not law enforcement officers.  *See Callaway v. New Mexico Dept. of Corrections,* 117 N.M. 637, 641 (N.M.App. 1994).

Therefore, Defendant is entitled to dismissal of Plaintiff's state law tort claim either because the limitations period expired, or because Plaintiff has failed to identify a specific waiver provision on which to base his claim.

## IV.    Motion for Sanctions

Finally, Defendant seeks sanctions under Fed.R.Civ.P. 11(b).   Defendant contends that no attorney could reasonably believe that a federal question was not raised in the complaint, given the repeated reference to federal civil rights statutes and constitutional deprivations. Plaintiff places the blame on an incomplete "redaction" of the federal jurisdictional allegations in the complaint.   However, this is not a case where there is an isolated or overlooked reference to

---

[6]   Plaintiff does not, in fact, argue at all.  His response to Defendant's motion to dismiss contains no reference at all to his state law claim.

8

a federal claim that can be traced back to a typographical error.   A fair reading of the complaint places the bulk of the asserted violations under federal law.   Moreover, it strains credulity that, based on his best knowledge, information or belief, Plaintiff's counsel truly believes that only a formulaic recitation of the phrase "federal question" conjures federal jurisdiction.

      However, the Court denies Defendant's request for sanctions although such denial is without prejudice to Defendant resubmitting its motion or by seeking sanctions under 28 U.S.C. § 1927.[7]   Although Defendant correctly filed the request for sanctions as a separate motion, under Rule 11(c)(2), compliance with the so called "safe harbor" rule is mandatory and there is no indication that Defendant followed the safe-harbor provision.   That provision requires that the movant serve the motion without presenting it to the Court, giving opposing counsel 21 days after service to correct the deficiency or withdraw the challenged paper.   Without any firm proof that this was done, the Court cannot impose Rule 11 sanctions.   *See Roth v. Green,* 466 F.3d 1179, 1187 (10th Cir. 2006) (noting that it is an abuse of discretion to grant Rule 11 sanctions if the defendant did not comply with the safe-harbor provision).

      If Defense counsel complied with the safe harbor provision then Defendant may renew its Motion for Rule 11 Sanctions provided such motion is filed with proof of safe harbor compliance within 14 days of the entry of this Memorandum Opinion and Order.   Alternatively, the Court will entertain a motion for sanctions pursuant to 28 U.S.C. § 1927 provided such motion is filed within the same 14 day time limit.

      **THEREFORE,**

---

[7]   28 U.S.C. § 1927 provides that "[a]ny attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."   Sanctions are appropriate when an attorney acts recklessly or with indifference to the law; is cavalier or bent on misleading the court; intentionally acts without a plausible basis; or when the entire course of the proceedings is unwarranted.   *Steinert v. Winn Group, Inc.*, 440 F.3d 1214, 1221 (10th Cir.2006).

**IT IS ORDERED**  that:

- Defendant Emerald's Motion to Dismiss **(Doc. 5)** is hereby GRANTED for reasons described in this Memorandum Opinion and Order;

- Defendant Emerald's Motion for Sanctions Pursuant to Fed.R.Civ.P. 11 **(Doc. 14)** is hereby DENIED at this time, subject to Defendant's re-filing, for reasons described in this Memorandum Opinion and Order; and

- Plaintiff's Motion to Remand **(Doc. 9)** is hereby DENIED for reasons described in this Memorandum Opinion and Order.


_____
UNITED STATES DISTRICT JUDGE